MARTHA BRADLEY, Appellant, v. DONALD J. ROMEO, M.D., UNITED PACIFIC VENTURES, INC. DBA AMERICAN AMBULANCE, Respondents.

No. 16228

March 25, 1986                    716 P.2d 227

[Rehearing denied May 28, 1986]

*Burris & Thomas*, Las Vegas, for Appellant.

*Dennis M. Sabbath* and *Kevin B. Christensen*, Las Vegas, for Respondent Donald J. Romeo, M.D.

*Brown, Wells, Beller & Kravitz* and *Harry P. Marquis*, Las Vegas, for Respondent United Pacific Ventures, Inc., dba American Ambulance.

# OPINION

*Per Curiam:*

The issue presented is whether one who individually signs a promissory note to guarantee a preexisting corporate debt is personally liable on that note. Our examination of the relevant statutes reveals that there is liability. Accordingly, we reverse.

On February 14, 1980, Chester Ham[1] loaned $15,000 to United Pacific Ventures, Inc. dba American Ambulance (American). Although the check was made out to Donald Romeo (a shareholder in American), the trial court found that the loan was made to American rather than to Romeo personally.[2] Several months later Romeo and Ryan Johnson, who is the president and principal shareholder of American, signed a promissory note in the amount of $15,000, plus interest, in favor of Ham. The note does not indicate that either of the signatures was made in a representative capacity, and no company or corporate name appears on the face of the note. Both American and Johnson subsequently filed for bankruptcy, and Ham brought this action against Romeo to enforce the note.

The district court denied enforcement based on a finding that Romeo received no consideration for the note. This result is contrary to NRS 104.3408 (UCC 3-408).

NRS 104.3408 provides, in relevant part:

> *Consideration.* Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (NRS 104.3305), except that *no consid-*

---

[1]Ham died on August 27, 1985. This appeal is being prosecuted by Martha Bradley, the administratrix of Ham's estate.

[2]After the check was negotiated, Ham inserted the words "personal loan" on the face of the check. The trial court held that this was done in order to bolster Ham's claim against Romeo.

*eration is necessary for an instrument* or obligation thereon *given in payment of or as security for an antecedent obligation of any kind.*

(Emphasis added.)

Under that statute, antecedent debt flowing to a third party is sufficient consideration to support liability on a promissory note. *See, e.g.,* UCC 3-408, comment 2;[3] Farmers & Merc. Ntl. Bank of Hatton v. Lee, 333 N.W.2d 792 (N.D. 1983).

Romeo urges this court to disregard NRS 104.3408 because the question of its applicability was raised for the first time by this court. The ability of this court to consider relevant issues *sua sponte* in order to prevent plain error is well established. *See, e.g.,* Western Indus., Inc. v. General Ins. Co., 91 Nev. 222, 230, 533 P.2d 473, 478 (1975). Such is the case where a statute which is clearly controlling was not applied by the trial court.

Romeo requests a new trial to present additional defenses to enforcement of the note. However, an examination of the defenses relied upon reveals that they either lack merit as a matter of law or have been waived due to Romeo's failure to pursue them at trial.

The contention that Romeo did not intend to be personally liable on the note can be dispensed with by examining NRS 104.3403 (UCC 3-403). That statute provides, in relevant part:

2. An authorized representative who signs his own name to an instrument:

(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity.

(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

---

[3]UCC 3-408, comment 2 provides, in relevant part:

The "except" clause is intended to remove the difficulties which have arisen where a note or a draft, or an indorsement of either, is given as payment or as security for a *debt already owed by the party giving it, or by a third person.* The provision is intended to change the result of decisions holding that where no extension of time or other concession is given by the creditor the new obligation fails for lack of legal consideration.

(Emphasis added.)

Romeo argues that since this action involves the immediate parties, he is entitled under 3-403(2)(b) to demonstrate his intent to sign in a representative capacity only. However, 3-403(2)(b) applies only where the instrument names the person represented or shows that the signature is in a representative capacity. Since the note neither names American nor indicates that Romeo signed on behalf of American, Romeo is personally obligated by virtue of 3-403(2)(a) and parol evidence of representative capacity is not admissible, even between the immediate parties. *E.g.,* Schwartz v. Disneyland Vista Records, 383 So.2d 1117, 1119-20 (Fla.App. 1980) (no parol evidence even though payee intended obligation from corporation); Bostwick Banking Company v. Arnold, 178 S.E.2d 890, 893 (Ga. 1970) ("One who executes a note in his own name with nothing on the face of the note showing his agency cannot introduce parol evidence to show that he executed it for a principal, or that the payee knew that he intended to execute it as an agent."); K-Ross Bldg. Sup. Ctr. v. Winnipesaukee Chalets, 432 A.2d 8, 11 (N.H. 1981); Mid-America Real Estate & Inv. Corp. v. Lund, 353 N.W.2d 286, 288-89 (N.D. 1984). *See also* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 13-4, at 493 (2d ed. 1980) ("Even if the person taking the instrument knows that the agent is signing in a representative capacity, the agent cannot introduce parol evidence to show that his signature was made for another.").

Because the note neither names American nor indicates that Romeo signed in a representative capacity, he is personally obligated as a matter of law.

Romeo also contends that Ham's insertion of the words "personal loan" on the face of the check can bar enforcement of the promissory note executed months later. The fact that the note was a separate document executed in a subsequent transaction precludes a finding that enforcement is barred under NRS 104.3407 or 104.3119. Neither does the earlier alteration or Ham's testimony that the loan was made to Romeo rather than to American justify cancellation of the note due to lack of "good faith" under NRS 104.1203. *Accord, see* Bill's Coal Co. v. Board of Public Utilities, etc., 682 F.2d 883 (10th Cir. 1982), holding that a party's "bad faith" in urging an interpretation of a contract provision contrary to the parties' original intent could not serve as the basis for cancellation of the contract.

Regarding Romeo's claim that the note may have been discharged by impairment of collateral (NRS 104.3606(1)) or partial

payment, it should be noted that these questions were in issue when the matter was tried below. Since Romeo failed to present any evidence to support these defenses, we are not inclined to order a new trial to give Romeo a second chance to prove his case. *See, e.g.,* Snow v. Pioneer Title Ins. Co., 84 Nev. 480, 487, 444 P.2d 125, 129 (1968) (appellant not entitled to new trial in order to call witness where he did not consider witness's testimony important under theory presented at first trial).

Romeo chose to guarantee an antecedent corporate debt by signing his name to a promissory note. The promise *is* enforceable. We therefore reverse and order that judgment be entered for appellant.